Filed 12/23/20  P. v. Tapia CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> ANGEL TAPIA, <br><br>     Defendant and Appellant. | D076793 <br><br><br> (Super. Ct. No. JCF001011) |

APPEAL from an order of the Superior Court of Imperial County, Poli Flores, Jr., and Juan Ulloa, Judges.  Reversed.

Matthew R. Garcia, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Angel Tapia appeals the court's October 29, 2019 order denying his petition to modify the terms of a protective order to allow him to resume living in the family home.  He contends that the court abused its

discretion when it summarily denied his petition, as the trial judge had only been assigned the case about 30 minutes before ruling on the petition; that before the case was reassigned as a result of the prosecutor's peremptory challenge, the previous judge was contemplating allowing defendant to return home, after noting the substantial progress he had made on probation, including completing a 52-week anger management course; and that once the case was reassigned, the new judge failed to follow the law in analyzing the various factors *required* by Penal Code[1] section 1203.3, subdivision (b)(6).

As we explain, we conclude the court abused its discretion under the circumstances of this case. We therefore reverse the order denying the modification petition.

FACTUAL AND PROCEDURAL BACKGROUND

At the time of the offense in this case, defendant was 19 years old. Before the incident in question, defendant had lived with his grandmother, who raised him and became his legal guardian when he was 13 years old. Defendant's two younger sisters, who were about 11 or 12 years old at the time of the incident, also lived in the home. As a child, defendant was diagnosed with bipolar disorder and attention-deficit hyperactivity disorder.

Defendant also suffered from cognitive development disability, memory lapses, and has had difficulty understanding instructions. At or near the time of the offenses in this case, doctors at the Imperial County Behavioral Health Services had prescribed defendant anti-depressants and antipsychotic medications to keep his mental and physical health stable. About a month before the incident, doctors discontinued some of defendant's medication, leading to a change in his behavior.

---

[1]    All further statutory references are to the Penal Code.

2

On June 28, 2018, defendant removed a television from his sisters' bedroom and took it into his room. Defendant's grandmother told him to return it but he refused. An argument ensued, which became physical. Defendant punched his grandmother in the face and head. When she threatened to call the police, defendant unplugged the telephone in the kitchen and threatened to kill his sisters. Defendant then threw the base of the phone at one of his sisters, hitting her in the arm. The police were called, and their report later formed the factual basis of the plea in this case.

A complaint was filed in July 2018 by the Imperial County District Attorney, charging defendant with attempted murder (§§ 187, subd. (a) & 664; count 1); assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 2); making criminal threats (§ 422, subd. (a); count 3); cutting a utility line (§ 591; count 4); and child abuse (§ 273a, subd. (a); count 5). On August 6, 2018 defendant pleaded "no contest" to assault by means likely to produce great bodily injury (count 2) and child abuse (count 5). The remaining counts were dismissed as part of the plea.

On September 4, 2018, the trial court suspended imposition of sentence and placed defendant on four years of formal probation and 80 days in local custody, with credit for time served. As a condition of probation, the trial court ordered defendant to complete 52 weeks of anger management; and, as particularly relevant here, issued a "no contact" protective order prohibiting defendant from having any contact with his grandmother and his sisters who were the victims in the case.

The no-contact order thereafter was modified twice, as defendant made progress while on probation. On April 18, 2019, the trial court modified the protective order to allow telephone contact between defendant and his grandmother. On July 30, the protective order was again modified to allow

3

peaceful contact between defendant and his family. However, after the case was reassigned on October 29, a new judge denied defendant's petition to modify the protective order to allow defendant to resume living in the family home.

Defendant filed a timely notice of appeal, and then an amended notice of appeal.

## DISCUSSION

### A. *Guiding Principles*

"[A] ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to exercise the discretion vested in it by law. [Citations.]" (*People v. Penoli* (1996) 46 Cal.App.4th 298, 302 (*Penoli*).) "Failure to exercise a discretion conferred and *compelled by law* constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal." (*Id.* at p. 306, italics added.)

A court "has the authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence." (§ 1203.3, subd. (a).) As particularly relevant here, the exercise of the court's authority in subdivision (a) includes modification of a protective order that is a condition of probation in a case involving domestic violence. (*Id.*, subd. (b)(6).)

Subdivision (b)(6) of section 1203.3 provides in part: "In determining whether to limit or terminate the protective order, the court *shall* consider if there has been any material change in circumstances since the crime for which the order was issued, and any issue that relates to whether there exists good cause for the change, including, but not limited to, consideration of *all* of the following: [¶] (A) Whether the probationer or supervised person

4

has accepted responsibility for the abusive behavior perpetrated against the victim. [¶] (B) Whether the probationer or supervised person is currently attending and actively participating in counseling sessions. [¶] (C) Whether the probationer or supervised person has completed parenting counseling, or attended alcoholics or narcotics counseling. [¶] (D) Whether the probationer or supervised person has moved from the state, or is incarcerated. [¶] (E) Whether the probationer or supervised person is still cohabiting, or intends to cohabit, with any subject of the order. [¶] (F) Whether the defendant has performed well on probation or mandatory supervision, including consideration of any progress reports. [¶] (G) Whether the victim desires the change, and if so, the victim's reasons, whether the victim has consulted a victim advocate, and whether the victim has prepared a safety plan and has access to local resources. [¶] (H) Whether the change will impact any children involved, including consideration of any child protective services information. [¶] (I) Whether the ends of justice would be served by limiting or terminating the order." (Italics added.)

B. *Additional Background and Analysis*

At the July 30 hearing, defendant, his grandmother (his legal guardian), and his 18-year-old sister Tiffany all testified they wanted defendant to resume living in the family home. Tiffany indicated her younger sisters also missed their brother and asked for him. By that time, defendant had complied with the terms of probation: he had taken his medication as prescribed; and had participated in and completed 52 weeks of anger management classes. He also was in compliance with his behavioral health appointments at the San Diego Regional Medical Center. In addition, defendant's grandmother and Tiffany testified they had safety plans in place should defendant act up again.

The court during the hearing indicated it had considered many of the required factors in section 1203.3, subdivision (b)(6). It noted that many of them favored defendant, and that it was leaning toward granting modification of the protective order, as sought by defendant *and* his family. However, the court stated it wanted to hear from defendant's younger sisters before it granted the petition.

In response to the court's position, the prosecutor at the continued October 29 hearing exercised a peremptory challenge, removing the trial judge who had been overseeing the case for at least a year. The case was then reassigned that morning. After a short recess, the new trial judge took up the petition to modify the protective order. Defendant, his grandmother, and his older and younger sisters were in court and available for further discussion on the petition.

The new trial judge stated on the record that he had been assigned the case "about a half hour ago" and had read the file "as quickly as [he] could." The prosecutor noted the previous trial judge had wanted to hear from the younger sisters. However, the new judge instead addressed defendant's grandmother, asking her many questions that candidly showed a lack of knowledge about the case.

During the hearing, the prosecutor argued against allowing defendant to resume living in the family home, claiming it was too risky for his younger sisters. The prosecutor added, "He is an adult. You don't have a right to live with your grandma when you're an adult or with your mommy." The court agreed with the prosecutor and denied the petition to modify, without reviewing all of the factors as required by subdivision (b)(6) of section 1203.3.

Initially, we find the prosecutor's statements unfortunate. They were derisive to a defendant who had clearly been trying to rehabilitate his life,

6

and disrespectful to his grandmother, who had raised him and taken care of his needs since childhood.

We conclude the new trial judge abused his discretion in denying the petition. The court did so when it failed to take the time necessary to review the petition, including continuing the matter to a later date to allow it to fully consider the file and come up to speed on the case; and when it failed to interview defendant's younger sisters, as was contemplated by the recused judge who had closely monitored the case.

We separately conclude the new judge also abused his discretion by failing to consider *all* of the factors in subdivision (b)(6) of section 1203.3 in denying the petition. (See *Penoli, supra,* 46 Cal.App.4th at p. 302 [noting the failure to exercise a "discretion conferred and *compelled by law* constitutes a denial of a fair hearing"], italics added.) Like the former trial judge, we note many of these factors appear[2] to have favored granting the modification petition, including that defendant had accepted responsibility for his behavior during the June 28, 2018 incident (see § 1203.3, subd. (b)(6)(A)); that as a result of the incident, he had been in counseling at the San Diego Regional Medical Center (*id.*, subd. (b)(6)(B)); that he had completed a court-ordered 52-week anger management course (*id.*, subd. (b)(6)(C)); that in his petition he intended to cohabit with family members that were subject to the protective order (*id.*, subd. (b)(6)(E)); that defendant had "performed well on probation," a point also recognized by both the new judge and the prosecutor during the October 29 hearing (*id.*, subd. (b)(6)(F)); that defendant's grandmother and siblings were in favor of him returning to the family home and had a safety plan in place (*id.*, subd. (b)(6)(G)); and that the "ends of

---

[2] We say "appear" because on remand, it will be up to the trial court to consider anew *all* of the factors in subdivision (b)(6) of section 1203.3 in ruling on defendant's petition.

7

justice" appear to be served by modifying the protective order as requested by defendant and his family (*id.*, subd. (b)(6)(I)).

## DISPOSITION

The October 29, 2019 order denying defendant's petition to modify the terms of the protective order to allow him to resume living in the family home is reversed.  On remand, defendant's petition is to be expedited.


BENKE, Acting P. J.

WE CONCUR:


HALLER, J.


GUERRERO, J.